[Cite as *Morford v. Morford*, 2018-Ohio-3439.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| BARBARA A. MORFORD, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | | **CASE NO. 2017-A-0044** |
| - vs - | : | |
| DENNIS L. MORFORD, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2008 DR 154.

Judgment: Reversed and remanded.

*William P. Bobulsky*, William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Plaintiff-Appellant).

*Jane Timonere*, Timonere Law Offices, L.L.C., 4 Lawyers Row, Jefferson, OH 44047-1099 (For Defendant-Appellee).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Barbara A. Morford, appeals from the June 21, 2017 judgment entry of the Ashtabula County Court of Common Pleas, adopting the magistrate's decision of March 9, 2017, and granting the motion of appellee, Dennis L. Morford, to terminate spousal support and health care insurance. At issue on appeal is the trial court's decision that appellant is no longer entitled to receive spousal support and health care insurance because she was cohabitating with an unrelated male. The judgment is reversed.

**{¶2}** The parties married in 1982 and were granted a divorce in 2009. In the divorce decree, and pursuant to the parties' agreement, appellee was ordered to pay monthly spousal support to appellant for life, terminating only upon appellant's death, remarriage, or cohabitation with an unrelated male. Appellee was also ordered to "provide and enroll [appellant] on COBRA health insurance and prescription coverage" and pay the monthly premiums; this obligation was subject to termination under the same conditions as the spousal support.

**{¶3}** On June 24, 2016, appellee filed a motion to terminate spousal support and health care insurance. Appellee alleged that "[f]acts have arisen since the entry of the Decree showing that Ms. Morford concealed the fact that she had commenced cohabitation with an unrelated male in the State of Florida." Specifically, appellee asserted the following:

> a. Mr. Morford has become aware of a lawsuit entitled *William H. Behrens v. Barbara A. Morford*, case number 2015-CA-2542-NC in the Circuit Court for the 12th Judicial Circuit in Sarasota County, Florida. In that case, the Plaintiff has alleged that he and Ms. Morford were engaged and living together from December 23, 2012. The suit alleges the parties thereto commenced cohabitating together, primarily at the Morford Property, since Morford did not want to promptly get married since she did not want to prematurely terminate the receipt of alimony payments from a prior husband.
>
> b. The suit further asserts that as of November 22, 2013, Mr. Behrens and Ms. Morford created the William H. Behrens and Barbara A. Morford Revocable Trust wherein the parties commingled their assets for their benefit.

**{¶4}** A contested hearing was held before the magistrate, who entered her decision on March 9, 2017. The magistrate recommended that appellee's motion should be granted and that the spousal support and health care insurance requirements of the separation agreement should terminate as of the date the final judgment is filed, based

2

on the magistrate's finding that appellant had been cohabitating with Mr. Behrens from December 2012 until February 2015.

{¶5} Appellant filed objections and supplemental objections to the magistrate's decision, to which appellee responded, and a transcript of the hearing. Appellant claimed the magistrate erroneously concluded that a state of cohabitation existed between appellant and Mr. Behrens and that they lived in a functional equivalent of marriage; the magistrate erroneously placed the burden of proof upon appellant and relied upon hearsay evidence; and appellee is not entitled to equitable relief of his spousal support obligation because of his failure to maintain medical insurance for appellant.

{¶6} After conducting an independent review of the evidence, the trial court concluded the magistrate's findings were supported by substantial credible evidence and there was no error of law or other defect in the magistrate's decision. The trial court overruled appellant's objections, adopted the magistrate's decision, and granted appellee's motion to terminate spousal support and health care insurance as of June 21, 2017, the date of the judgment.

{¶7} Appellant has appealed this judgment and asserts three assignments of error for our review:

> [1.] The decision by the trial court in overruling the Objections by Plaintiff-Appellant (Barbara) to the Magistrate's Decision of March 9, 2017, was prejudicial error and an abuse of discretion due to a failure of evidence as to the elements of cohabitation.
>
> [2.] The decision by the trial court in overruling the objections by Plaintiff-Appellant (Barbara) to the Magistrate's Decision of March 9, 2017, was prejudicial error and an abuse of discretion due to conclusions not supported by the evidence.
>
> [3.] The decision by the trial court in overruling the objections by Plaintiff-Appellant (Barbara) to the Magistrate's Decision of March 9,

2017, was prejudicial error and an abuse of discretion due to the admission of and reliance upon hearsay and facts not in evidence.

{¶8} Appellant's assignments of error all relate to the trial court's adoption of the magistrate's decision that recommended spousal support should be terminated because appellant had been cohabitating with Mr. Behrens.

{¶9} We review the trial court's adoption of a magistrate's decision for abuse of discretion. *Carson v. Holmes*, 11th Dist. Portage No. 2010-P-0007, 2010-Ohio-4199, ¶23 (citations omitted). "'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason." *Id.*, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). "Further, an abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Id.*, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶10} "Error, if any, committed by the trial court focuses not on the magistrate's findings or proposed decision, but rather on the trial court's actions." *Id.* at ¶24, citing *W.R. Martin, Inc. v. Zukowski*, 11th Dist. Lake Nos. 2006-L-028 & 2006-L-120, 2006-Ohio-6866, ¶32, citing *In re Woodburn*, 9th Dist. Summit No. 20715, 2002 WL 5179, *2 (Jan. 2, 2002).

{¶11} We first consider appellant's third assignment of error, in which she argues the trial court erred by admitting inadmissible hearsay evidence regarding cohabitation, a trust agreement, and litigation between appellant and Mr. Behrens, all of which appellant asserts was a substantial basis for the trial court's judgment.

{¶12} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

4

asserted." Evid.R. 801(C). "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802. Therefore, we apply a de novo standard of review to determine whether the evidence at issue here was inadmissible hearsay. *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶23, citing *John Soliday Fin. Group, LLC v. Pittenger*, 190 Ohio App.3d 145, 150 (5th Dist.2010).

{¶13} At the hearing, counsel for appellee began questioning appellant about "Exhibit A," which was a copy of a civil complaint filed by Mr. Behrens against appellant in the state of Florida. Attached to the complaint was a copy of a Revocable Trust Agreement between appellant and Mr. Behrens; a durable power of attorney form executed by Mr. Behrens; and a list of items Mr. Behrens claimed belong to him that were at appellant's home. At the time of the hearing, no judicial determination had been rendered on any of the contested issues in that matter. Appellant's counsel raised extensive objections to the use of Exhibit A, as it was an unauthenticated and non-certified public document. Appellee's counsel responded that, if appellant had seen and can identify the exhibit, it can be used for questioning. Appellee's counsel also admitted that Exhibit A was being offered for the truth of the matter asserted therein:

> MAGISTRATE: Well I think that procedurally you have to question her about the lawsuit first before you go ahead and try to introduce this, especially because it's unauthenticated. I mean, you're gonna use it for the truth of the matter asserted in the document, right?
>
> [APPELLEE'S COUNSEL]: Yes.
>
> MAGISTRATE: So that would be hearsay, wouldn't it?

5

[APPELLEE'S COUNSEL]: Well there is a, her trust that's attached that bears her signature. So yes, it's not a certified copy, but certainly she can identify her signature. There would be questions regarding the trust.

[APPELLANT'S COUNSEL]: Even if properly authenticated, meaning by a certification as a public document, it's a complaint. It is a series of allegations. It is not an affidavit that has been signed. And even if it was signed, if it was an affidavit signed, it would still not be admissible because I have the right to cross examine the person that has signed the affidavit. So even if authenticated, it is a series of allegations, not a series of facts. And what's attempted to be done here is to create in some way a factual conclusion based upon a series of allegations contained in an unauthenticated, unverified document. And that's the basis for the - -

MAGISTRATE: Okay. What I'm gonna do is I'm gonna overrule the objection, and then we'll have to see how it is progressed. Because I don't think at this point I know exactly what the document says. I think we can speculate, but - - so go ahead.

{¶14} Appellant was then questioned upon Exhibit A, which included the allegations of the complaint as well as the contents of the attached documents. On redirect, the following line of questioning occurred:

[APPELLEE'S COUNSEL]: You are aware that [Mr. Behrens] has stated that he co-habitated with you?

[APPELLANT'S COUNSEL]: Objection.

MAGISTRATE: Overruled.

BARBARA MORFORD: Pardon me?

[APPELLEE'S COUNSEL]: You are aware that [Mr. Behrens] has stated that he co-habitated with you, correct?

BARBARA MORFORD: Stated in what?

[APPELLEE'S COUNSEL]: On page 2 of his complaint. Paragraph 6.

[APPELLANT'S COUNSEL]: I'm sorry, Your Honor, I'm gonna have to renew my objection that there is a question posed of a statement made by another, a third party who I cannot cross examine, and it's

being asserted for the truth of the statement. And I would again submit that it is inadmissible and improper.

MAGISTRATE: Well she answered she was aware of that allegation. So I'm gonna overrule it.

[APPELLEE'S COUNSEL]: So that's the question that's before you. Are you aware of the allegation?

BARBARA MORFORD: It says on page 6, that's - - you said, it says primarily at the Morford property.

[APPELLEE'S COUNSEL]: It says that subsequent to your engagement he and you commenced co-habitating together, primarily at the - -

BARBARA MORFORD: Primarily at my property.

[APPELLEE'S COUNSEL]: At the Morford property, correct?

BARBARA MORFORD: Not his property. Correct.

[APPELLEE'S COUNSEL]: Right. That's his, you're aware he's made that claim?

[APPELLANT'S COUNSEL]: I'm going to again - -

BARBARA MORFORD: It's right here.

[APPELLANT'S COUNSEL]: - - object.

MAGISTRATE: Overruled.

{¶15} Ultimately, Exhibit A—comprised of the complaint and its attachments— was not admitted into evidence because the magistrate found it was unauthenticated. The magistrate stated, however, that appellant's testimony about the contents of Exhibit A was admissible.

{¶16} We agree with appellant that the allegations contained in the civil complaint filed by Mr. Behrens, including the allegation that he had cohabitated with appellant, constitute inadmissible hearsay. The allegations are statements that were not made by

7

the declarant while testifying at the hearing, and appellee's counsel admitted at the hearing that they were being offered to prove the truth of the matters asserted. Thus, appellee's argument on appeal that the statements were merely being used to impeach appellant's credibility is not only without merit, it is disingenuous. To properly introduce those allegations into evidence, appellee was required to either call Mr. Behrens to the stand or depose him, thereby allowing appellant the opportunity to cross-examine him.

{¶17} The magistrate erred in allowing the testimony about the allegations from Mr. Behrens' complaint and considering it as evidence over appellant's objections. The improper admission of hearsay evidence is only reversible error, however, when it affected the substantial rights of the party against whom the hearsay was used. *See* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *see also Brooks v. Bell*, 1st Dist. Hamilton Nos. A-9602497 & C-970548, 1998 WL 165024, *3 (Apr. 10, 1998).

{¶18} Here, both the magistrate and the trial court referenced Mr. Behrens' allegations as though they were facts in evidence. The magistrate's decision provides, in part:

> The Plaintiff maintains that Mr. Behrens did not contribute financially to her household and did not reside with her. She admitted he kept some tools at her house and that he has filed a lawsuit against her in their home state of Florida, in which he alleges that she retains numerous of his personal items and money. *In disputing the validity of Mr. Behrens' allegations*, the Plaintiff stated that 'his friend picked [his personal items] up,' and that the money she removed from their joint checking account was used to pay bills for the wedding. [Emphasis added.]

8

{¶19} The trial court, in overruling the objections to the magistrate's decision, concludes that "the testimony regarding the lawsuit did not erroneously influence the Magistrate's decision."

{¶20} We conclude appellant's substantial rights were affected by the trial court's error in admitting and considering testimony regarding inadmissible hearsay evidence. The magistrate inferred that she expected appellant to rebut the validity of allegations that should have never been admitted. The trial court's conclusion that the magistrate was not influenced by the lawsuit testimony is belied by the fact that the magistrate placed the burden on appellant to disprove the hearsay factual allegations in Mr. Behrens' complaint.

{¶21} This leads us to appellant's second assignment of error, which argues the trial court reversed the burden of proof by requiring appellant to prove that she was not cohabitating with Mr. Behrens. We agree. The moving party seeking to terminate spousal support has the burden of establishing cohabitation. *Dickerson v. Dickerson*, 87 Ohio App.3d 848, 851 (6th Dist.1993).

{¶22} The only witnesses to testify were appellant and appellee; appellee had no personal knowledge of the circumstances between appellant and Mr. Behrens. The magistrate's decision provides, in part: "The Magistrate is not convinced by the Plaintiff's claim that Mr. Behrens was merely a visitor in her home. The Plaintiff's testimony in that regard is unreliable and is contradicted by her description of the situation. The Plaintiff has a strong interest in convincing the Magistrate that she and Mr. Behrens were not cohabitating."

{¶23} The trial court, in overruling the objections, held that "[t]he statement that the plaintiff has a strong interest in convincing the Magistrate that she was not

9

cohabitating is not a shifting of the burden of proof, but a reference to the tests of truthfulness used to judge the credibility of witnesses in every trial."

{¶24} We conclude, however, that the decision to overrule this objection to the magistrate's decision was an abuse of discretion. Perhaps the "strong interest" statement, standing alone, would not evince application of a reversed burden of proof. However, when that statement is coupled with the fact that the magistrate allowed appellee to elicit testimony about hearsay allegations and then, in her decision, referenced the fact that appellant was put in the position of disputing the validity of those hearsay allegations, it is evident the magistrate reversed the burden of proof on the issue of cohabitation. Put another way, when the inadmissible evidence and the questioning thereon is removed, there is no affirmative proof of any kind sufficient to establish cohabitation.

{¶25} This brings us to appellant's first assignment of error, in which appellant argues the trial court erred by adopting the magistrate's decision because appellee, as the moving party, did not meet his burden to prove that appellant was cohabitating with Mr. Behrens. Her essential argument is that the trial court's finding of cohabitation is against the manifest weight of the evidence.

{¶26} "Whether cohabitation exists is a question of fact for the trial court, and is subject to a manifest weight of the evidence review." *Harrison v. Harrison*, 11th Dist. Ashtabula No. 2005-A-0029, 2006-Ohio-4948, ¶12 (citations omitted). "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Id.*, quoting *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279 (1978), syllabus.

10

{¶27} "The underpinning for decisions terminating spousal support rests on the rationale for spousal support itself:

> '[Spousal support] is provided for the needed support of the ex-spouse and, if the ex-spouse is living with another person to the extent that the other person provides support or is supported, then the underlying need for [spousal support] is reduced or does not exist. Therefore, cohabitation, in the legal sense, implies that some sort of monetary support is being provided by the new partner or for the new partner. Without a showing of support, merely living together is insufficient to permit a termination of [spousal support].'

*Clark v. Clark*, 168 Ohio App.3d 547, 2006-Ohio-4820, ¶¶21-22 (11th Dist.), quoting *Thomas v. Thomas*, 76 Ohio App.3d 482, 485 (10th Dist.1991). *See also Day v. Day*, 2d Dist. Greene No. 2002-CA-79, 2002-Ohio-6779, ¶4 ("cohabitation is established, and a spousal support obligation is subject to termination, when a paramour voluntarily undertakes a duty of total support or otherwise assumes obligations equivalent to those arising from a ceremonial marriage").

{¶28} This court holds that "cohabitation" consists of three elements: (1) the former spouse must actually be residing with another; (2) the relationship must be of a sustained duration; and (3) there must be a sharing of day-to-day living expenses and financing. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2011-A-0033, 2012-Ohio-1673, ¶29. "In paraphrasing this standard, the *Derecskey* court observed that the existence of a relationship is not sufficient to prove cohabitation; there must also be a showing of monetary support that results in the functional equivalent of marriage." *Id.*, citing *In re Derecskey*, 11th Dist. Geauga No. 2008-G-2865, 2009-Ohio-2188, ¶20.

{¶29} Appellant testified that she and Mr. Behrens became engaged in December 2012, with the wedding scheduled for March 2015, and that their relationship was "on again, off again" throughout its duration. The relationship finally ended in February 2015,

11

one month prior to the wedding. It is undisputed that appellant and Mr. Behrens owned and maintained separate residences during this time. Appellant testified that Mr. Behrens stayed at her home one to four nights per week and that he brought his clothing and personal effects to her home in a backpack. She testified that Mr. Behrens kept only a few tools at her home, in the garage. Appellant denied ever staying the night at Mr. Behrens' home. She stated the couple stored various items at Mr. Behrens' home that were purchased in anticipation of their marriage and future marital home.

{¶30} Appellant further testified that she and Mr. Behrens created a revocable trust together, into which appellant placed her home and Mr. Behrens placed his real estate, pension, and life insurance. A parcel of Mr. Behrens' real estate was sold from the trust, and appellant testified she received one half of the proceeds to pay expenses for the wedding. Appellant stated she was issued a credit card in her name to make charges on Mr. Behrens' account for purchases related to the wedding and to purchase items from Amazon on Mr. Behrens' behalf. Appellant testified they opened a joint bank account for wedding and honeymoon expenses, from which she withdrew $15,000.00 to pay off some of those expenses when the wedding was cancelled.

{¶31} Appellant further testified Mr. Behrens never paid any of her day-to-day living expenses or household bills, and she never paid for any of his. The following exchange took place between appellant and counsel for appellee during cross-examination:

Q: Did [Mr. Behrens] give you any money towards your bills?

A: No.

Q: Did you ever pay any of his bills?

A: Such as?

12

Q: Any of his bills. Did you ever pay any of [Mr. Behrens'] bills?

A: I paid his lawn care twice, and he reimbursed me, because he didn't have a check to - -

Q: Okay. So that was just, you were just doing him a favor?

A: Correct.

The following exchange also took place between appellant and her own counsel on direct examination:

Q: The house was purchased in your sole name, and the mortgage was applied for in your sole name?

A: Exactly, yes.

Q: Who has paid the mortgage payments on your Venice, Florida property.

A: I have always automatically had them withdrawn out of my checking account. So I have - -

* * *

A: Yes. I've paid every mortgage payment automatically out of my checking account.

Q: Does that mortgage payment include property taxes?

A: Yes.

Q: You paid all of the property taxes yourself?

A: Yes.

* * *

Q: Did you receive any help from [Mr. Behrens] to pay any of those mortgage payments?

A: None.

Q: Do you have homeowner's association payments?

A: Yes. I have HOA fees that are automatically deducted out of my Wells Fargo account each month.

* * *

Q: The costs associated with both the homeowner's association, anything you've done inside, who has paid the expenses?

A: I have.

Q: Ever any payment by [Mr. Behrens] for them?

A: No.

* * *

Q: And what utilities do you have associated with that home?

A: I have a water bill through Sarasota Utilities, and I have [an electric] bill.

* * *

Q: And the two bills that you just indicated with, for water and electricity, are both associated with [your] home, is that correct?

A: Correct.

Q: How are they paid?

A: They're taking [sic] right out of my checking account.

Q: And have they always been taken out directly?

A: Always.

Q: Did [Mr. Behrens] pay any of your utility bills?

A: Never.

Q: Do you have a phone bill?

A: Yes, sir.

Q: Do you have any kind of cable TV?

A: Yes, sir.

* * *

Q: Who pays them.

A: They come out of my checking account, and one comes out on my credit card.

Q: Has [Mr. Behrens] ever paid any of those?

A: Never.

Q: Now do you have a car?

A: Yes, sir.

* * *

Q: Do you have a car payment?

A: It's $219.00 a month.

Q: Is it a lease or a purchase?

A: Purchase.

Q: And who pays it?

A: I pay it.

* * *

Q: Did [Mr. Behrens] ever pay for your transportation, your car?

A: Never.

Q: The operating expenses for the car, who paid for them?

A: I did, but most of it was usually under warranty.

Q: So between transportation, housing, utilities, who paid your bills?

A: I did.

Q: Did [Mr. Behrens] pay for any of them?

A: No, sir.

15

{¶32} The magistrate determined she was "not convinced by the Plaintiff's claim that Mr. Behrens was merely a visitor in her home. The Plaintiff's testimony in that regard is unreliable, and is contradicted by her description of the situation." The trial court further held that "[a] fair reading of the plaintiff's testimony, in its entirety, show that it is more probable than not that she was actually residing with William Behrens, in Florida, for a period that exceeded two years, and that there was a significant sharing of living expenses and finances. Her attempts to explain away the apparent facts are simply not credible."

{¶33} Even though the magistrate and trial court found appellant not credible, without the inadmissible hearsay evidence, to wit: Mr. Behrens' allegations in the complaint, there was no evidence presented to support appellee's claim that appellant and Mr. Behrens' actually resided together. Appellant denied that the two resided together. While one to four nights a week is a significant amount of time that Mr. Behrens spent at appellant's residence, this court has held that "significant visitation time does not equate to 'living together.'" *Harrison*, *supra*, at ¶14. Further, there is no evidence that appellant and Mr. Behrens shared day-to-day living expenses and financing. Appellant only admitted to sharing expenses related to the wedding and honeymoon, not day-to-day living expenses and financing.

{¶34} We conclude the trial court's finding of "cohabitation" is not supported by competent, credible evidence and is, therefore, against the manifest weight of the evidence. Contrary to the magistrate's decision, appellant's "description of the situation" did *not* amount to a description of "cohabitation" as per the requirements in *Gaul,* and it is *not* reasonable to infer from appellant's testimony that she and Mr. Behrens were living

16

in the functional equivalent of a marriage from the time of their engagement until the relationship ended. And, contrary to the trial court's judgment, a fair reading of appellant's testimony does *not* show that it is more probable than not that she was actually residing with Mr. Behrens for a period that exceeded two years and that there was a significant sharing of living expenses and finances. Appellee did not meet his burden of proving that appellant and Mr. Behrens assumed obligations, including financial support, traditionally associated with marriage. Spending nights together and planning and preparing for a wedding and honeymoon do not equate to a couple living in the functional equivalent of a marriage.

{¶35} The trial court erred in adopting the magistrate's decision and in granting appellee's motion to terminate spousal support.

{¶36} Appellant's first, second, and third assignments of error are well taken.

{¶37} The judgment of the Ashtabula County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.


THOMAS R. WRIGHT, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.