[Cite as *State v. McCaulley*, 2023-Ohio-1711.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

- vs -

DEON MCCAULLEY, II,

Defendant-Appellant.

CASE NO. 2022-L-105

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 001037

# O P I N I O N

Decided: May 22, 2023
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Aaron A. Schwartz*, *Joseph C. Patituce*, and *Catherine A. Purdum*, Patituce & Associates, LLC, 16855 Foltz Parkway, Strongsville, OH 44149 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Deon McCaulley, II, appeals his convictions in the Lake County Court of Common Pleas for Operating a Motor Vehicle While Under the Influence of Alcohol, a Drug of Abuse, or Combination of Them (OVI), a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a), and Improperly Handling Firearms in a Motor Vehicle, a fourth-degree felony, in violation of R.C. 2923.16(D)(1). Appellant raises three assignments of error which assert: (1) the trial court erred by failing to admit the arresting officer's police report under Evid.R. 803(8)(b); (2) the trial court erred by admitting

testimony about the vertical gaze nystagmus (VGN) test; and (3) that appellant's convictions were not supported by sufficient evidence.

{¶2} Having reviewed the record and the applicable caselaw, we find appellant's assignments of error to be without merit. First, the statements contained in the police report appellant sought to admit through Evid.R. 803(8)(b) were statements made by appellant's healthcare providers and were not based on the arresting officer's own firsthand knowledge or observations and the healthcare providers were under no duty to report the information. Second, appellant did not file a motion to suppress the evidence of the VGN test and has waived a challenge to whether the test was performed in substantial compliance with relevant standards and procedures on appeal and appellant suffered no harm from the admission of the evidence because the results of the test were negative. Finally, the State produced sufficient evidence to convict appellant of all charges.

{¶3} Therefore, we affirm the judgment of the Lake County Court of Common Pleas.

**Substantive and Procedural History**

{¶4} On June 13, 2021, appellant crashed his vehicle into a ditch on Prouty Road in Lake County. He was indicted on four counts arising from the incident: Count 1, Violation of a Protection Order, a third-degree felony in violation of R.C. 2919.27(A)(1); Count 2, Improperly Handling Firearms in a Motor Vehicle, a fourth-degree felony in violation of R.C. 2923.16(B); Count 3, Improperly Handling Firearms in a Motor Vehicle, a fourth-degree felony in violation of R.C. 2923.16(D)(1); and Count 4, Operating a

Vehicle Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them (OVI), a first degree-misdemeanor in violation of R.C. 4511.19(A)(1)(a).

{¶5} Appellant pled not guilty to the charges and the matter proceeded to jury trial. On the morning of trial, the State dismissed Counts 1 and 2.

{¶6} The following evidence was adduced at trial:

{¶7} The Ohio State Highway Patrol received a report of a reckless driver in the area of I-90 at mile post 197. The vehicle was described as blue with a partial license plate "JIA." Greg Smith testified that later he was driving on Ravenna Road in Lake County. At the intersection of Ravenna Road and Prouty Road he saw a blue sedan driving at a high rate of speed with "tires almost screeching." He turned onto Prouty Road and followed the vehicle where he continued to watch the vehicle's erratic maneuvering as it nearly struck a car in the oncoming lane of travel. Smith, who drives for a living, described it as the most dangerous driving he had ever seen. At the time, he believed the driver was either intoxicated or suffering from a medical emergency and planned to call 911 to report the driver.

{¶8} Smith then saw the vehicle crest a hill at a curve in the road and as he followed over the hill, saw that it had crashed into the ditch on the oncoming side of the road. Smith called 911 to report the crash and said he believed the driver was intoxicated. Smith testified he saw appellant throwing glass bottles (which he assumed were beer bottles) out of the car window into the woods near the ditch. He approached appellant to check his condition and smelled the odor of alcohol. Appellant got out of the vehicle and Smith noticed him staggering and unable to speak coherently.

{¶9} Lieutenant Michael Fearing of the Concord Township Fire Department responded to the scene of the accident. When Fearing approached appellant, he said that appellant was seated in his vehicle with the door open and was talking on his cell phone. Fearing heard appellant talking on the cell phone and noticed he had slurred speech and seemed "out of it." Fearing said he saw no indication of trauma which would cause this response from appellant. He believed appellant "was under the influence of something."

{¶10} Appellant handed Fearing his phone and said, "dad's cell." Fearing took the phone, began talking to an individual on the line and walked around the back of the vehicle to assess the scene. Fearing continued walking around the vehicle and approached the passenger side. Now at the passenger door, Fearing looked in the window and saw appellant holding a gun in his right hand. He ran to a safe distance and radioed that appellant had a weapon.

{¶11} Deputy Robert Rowland of the Lake County Sheriff's Office responded to the scene shortly after Fearing radioed about the presence of the gun. When Rowland arrived, he saw appellant standing on the driver's side of the vehicle near the trunk. He was about 70 to 100 yards away. Rowland said appellant complied with his directions to walk away from the vehicle unarmed. Officers detained appellant and determined he was unarmed. Rowland then searched appellant's vehicle and discovered a cloth holster on the driver's side floor and recovered the loaded handgun from the vehicle's glove box. The gun was later test fired and found to be operational.

{¶12} Firefighter Sterling Black assessed appellant for injuries after he was detained. Black performed an alertness test on appellant and found him to be alert and

4

oriented but noted he was slurring his words and was hard to understand. Black asked appellant if he had consumed alcohol and appellant said, "Yes, I had a little bit of some Henny earlier" referring to Hennessey brand liquor. After Black performed appellant's patient assessment, appellant refused further treatment from EMS and transport to the hospital.

{¶13} Trooper John Kronander of the Ohio State Highway Patrol testified that he has conducted approximately 100 OVI investigations and that he received training in alcohol and drug detection in individuals. Kronander initially responded to the call of an erratic vehicle on I-90 but did not make contact. He was later called to the scene of appellant's crash and verified appellant's vehicle matched the partial plates for the reported erratic driver.

{¶14} Kronander assessed the crash scene and observed appellant had struck a mailbox on the right side of the road, overcorrected, lost control of the vehicle and crashed into the ditch in the oncoming lane of travel. He did not observe any signs of braking. Kronander then made contact with appellant and noted mumbled speech, a slight odor of alcoholic beverage and bloodshot, glassy eyes.

{¶15} Kronander then administered Standardized Field Sobriety Tests (SFSTs). He testified that SFSTs are standardized tests designed by the National Highway Traffic Safety Administration (NHTSA) used to detect whether someone is under the influence of alcohol, drugs, or a combination of both. He said he received training in the administration of the Horizontal Gaze Nystagmus (HGN), the One Leg Stand (OLS), and the Walk and Turn (WAT) tests. Kronander testified to the procedure for administering each test and said he administered the tests in accordance with his training.

5

Case No. 2022-L-105

{¶16} Kronander said the HGN test has a pre-test and three parts, which require the subject to follow a stimulus with their eyes. Kronander said the purpose of the pre-test check is to assess whether a head injury or eye issues in general would indicate a subject cannot perform the test.

{¶17} At trial, Kronander explained the three phases of the HGN. He said the first phase of the HGN is to check for lack of smooth pursuit as the subject's eyes follow the stimulus moved horizontally back and forth 12-15 inches slight above the subject's eye level. The administrator looks for nystagmus – the involuntarily movement of the eyes – which looks like a jerking movement similar to a windshield wiper on a dry windshield. The second phase of the test is distinct and sustained nystagmus at maximum deviation. During this phase, the administrator of the test moves the stimulus as far as the person can track with their eye and holds it in that position for four seconds to observe if nystagmus remains. The third phase of the test is onset of nystagmus prior to 45 degrees. Here, the administrator moves the stimulus to a 45-degree angle to see if the onset of nystagmus occurs prior to reaching the 45-degree angle. If it does occur before 45-degrees, the stimulus is held at that point for 4 seconds and if nystagmus continues, it constitutes a clue.

{¶18} Kronander said the pre-test did not show any reason why appellant could not perform the HGN. He observed appellant to have six out of six clues present, which he said indicates a high probability of intoxication.

{¶19} Kronander also performed a Vertical Gaze Nystagmus (VGN) test, which he said does not count as a clue on the HGN but is used as an observation to help gauge a person's relative intoxication. Kronander explained the procedure for administering the

6

VGN test involves the subject tracking a stimulus 12-15 inches above eye level. The administrator moves the stimulus vertically until the subject cannot look up any farther. If the subject has nystagmus, this observation indicates the person has consumed a high amount of alcohol for that person's tolerance level.

{¶20} Appellant objected to the admission of Kronander's testimony on the VGN. However, the trial court overruled the objection and Kronander testified that appellant did not have VGN present. Appellant performed the WAT and OLS tests and Kronander observed multiple clues during each of those tests which indicated appellant was intoxicated.

{¶21} Kronander arrested appellant and took him to the Lake County Jail, however, appellant was refused entry due to injuries from his accident. Kronander brought appellant to TriPoint Hospital. While there, Kronander asked appellant to submit to a urine test, but appellant refused.

{¶22} Appellant sought to admit a statement that Kronander heard at the hospital that appellant had a fractured hip. The trial court ruled that this statement was hearsay and inadmissible. Appellant argued that Evid.R. 803(8) was an exception that would allow admission of the medical statement through Kronander's written police report. The trial court inquired of Kronander and he stated he could not specifically remember who told him that appellant had a fractured hip, but he believed it was one of appellant's healthcare providers. The trial court concluded that a certified medical record or other non-hearsay source of appellant's medical diagnosis would be admissible but said it would not admit the hearsay statement contained in Kronander's report because Kronander did not have personal knowledge of appellant's medical condition. Appellant made a proffer for the

7

record that he would have asked Kronander how his knowledge of appellant's injuries would affect his assessment of appellant's performance of the WAT and OLS tests.

{¶23} On cross-examination, defense counsel asked Kronander about appellant's ability to perform SFSTs. Kronander said that appellant had been cleared by EMTs and appellant denied having any problems to prevent him from performing them. He said the first time appellant complained of hip pain was in his cruiser on the way to the jail. He also acknowledged that appellant was discharged from the hospital with crutches.

{¶24} The State rested and appellant made a Crim.R. 29 Motion for Acquittal, which the trial court denied.

{¶25} Appellant called one witness, his father, Deon McCaulley Sr., to testify in his case in chief. McCaulley Sr. testified that appellant called to tell him he had been in an accident and McCaulley Sr. went to the scene. When he arrived, appellant was being treated by EMTs. McCaulley Sr. said appellant was speaking clearly with no delay in his responses and there was no odor of alcohol. He also said he had previously seen appellant while under the influence of alcohol and did not believe he was intoxicated at the time. On cross-examination, McCaulley Sr. acknowledged that he did not see appellant at the crash scene while he was standing up.

{¶26} Appellant rested and renewed his Crim.R. 29 motion, which the trial court denied. The jury returned a guilty verdict on both counts.

{¶27} On September 29, 2022, the trial court sentenced appellant to 45 days jail, one year community control, and a one-year license suspension.

{¶28} Appellant timely appealed and raises three assignments of error.

8

Case No. 2022-L-105

{¶29} Appellants first assignment of error states:

{¶30} "[1.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN FAILING TO PERMIT THE DEFENSE TO ENTER THE TROOPER'S POLICE REPORT AS EVIDENCE UNDER EVIDENCE RULE 803(8)(b), AND THAT REFUSAL CONSTITUTES A DENIAL OF THE RIGHT TO PRESENT A DEFENSE."

{¶31} Appellant argues that the trial court should have allowed the admission of Kronander's police report, which indicated appellant suffered from a fractured hip after his accident. Appellant believes this information was necessary to his defense because his injury undermined the reliability of the OLS and WAT SFSTs.

{¶32} This court has held that whether evidence constitutes inadmissible hearsay is a question of law subject to de novo review. *Morford v. Morford*, 2018-Ohio-3439, 118 N.E.3d 937, ¶ 12 (11th Dist.). "Determining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard of review." *State v. Hartman*, 161 Ohio St. 3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. This is because Evid.R. 802 specifically provides that "hearsay is not admissible." Therefore, "the trial court's decision to admit hearsay is not governed by the test of abuse of discretion, which the Supreme Court applies to instances where the trial court's evidentiary rulings relate to matters expressly or implicitly within its discretion, as in rulings on relevancy (Evid.R. 402 and 403) or expert testimony (Evid.R. 702)." *State v. Sorrels*, 71 Ohio App.3d 162, 165, 593 N.E.2d 313 (1st Dist.1991). We review the trial court's decision relating to

9

hearsay "in light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right." *Id.*

**{¶33}** Hearsay is defined as a "statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). It is well established that police reports are generally inadmissible hearsay. *State v. Williams*, 11th Dist. Trumbull No. 2005-T-0123, 2006-Ohio-6689, ¶ 23, citing *State v. Leonard*, 2104 Ohio St.3d 54, 818 N.E.2d 229, 2003-Ohio-6235, ¶ 111. Evid.R. 803(8)(b) is one exception to this general rule. *Id.*

**{¶34}** Evid.R. 803(8)(b) provides the following public records, reports, and statements are not hearsay, even though the declarant is available as a witness:

> matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.

**{¶35}** Under this rule a police report is potentially admissible evidence and the statements are not hearsay if the observations in the report are the firsthand observations of the official making the report or the observations of a person with a duty to report to a public official. *State v. Gau,* 11th Dist. Lake No. 2000-L-109, 2002-Ohio-4216, ¶ 19, citing *Petti v. Perna*, 86 Ohio App.3d 508, 514, 621 N.E.2d 580 (3rd Dist.1993). "'All persons furnishing and recording information must be under an official duty to do so.'" *Gau* at ¶ 19, quoting *State v. York*, 115 Ohio App.3d 245, 248, 685 N.E.2d 261 (4th Dist.1996). "'If the supplier of information is not under a duty to do so, an essential link in Evid.R. 803(8)(b) is broken.'" *Id.* This rule does not embrace statements made by private citizens.

10

*Gau*, citing *Cincinnati Ins. Co. v. Volkswagen of America, Inc.*, 41 Ohio App.3d 239, 242, 535 N.E.2d 702 (10th Dist.1987).

**{¶36}** A statement in a police report from a person who does not have a duty to make a report and acting as a private citizen is not admissible. *Id.* at ¶ 20. This is because it breaks an essential link in the analysis under Evid.R. 803(8)(b). *Id.* Evid.R. 803(8)(b) provides an exception which allows the defendant to admit statements in a report involving "matters observed by police officers and other law enforcement personnel" if there is no indication of a lack of trustworthiness. *Id.* at ¶ 21. However, this exception does not apply to statements in a report where the information is not based on firsthand observations of the officer. *Id.*

**{¶37}** Here, the statements appellant sought to introduce at trial were made by appellant's healthcare providers and recorded in Kronander's police report. During the evidence proffer, Kronander was unable to identify who specifically told him appellant had a fractured hip. This out of court statement was offered to prove the truth of the matter asserted – that appellant had been diagnosed with a hip fracture.

**{¶38}** Kronander did not record appellant's fractured hip in his report based on his own firsthand knowledge. *Gau* at ¶ 21. He included appellant's medical diagnosis in his report as he received it from appellant's healthcare professionals rather than his own observations.

**{¶39}** Further, we are unaware of any authority – and appellant cites none – which indicates that a healthcare provider has a duty to report a patient's medical status to the police. As *York* explained, this lack of duty to report breaks an essential link in the Evid.R.

11

803(8)(b) analysis. *York, supra,* at 248. Therefore, even though appellant offered the report, it was not admissible. *Id.*

{¶40} Assuming arguendo that the statements about appellant's medical diagnosis should have been admitted, we would still find no reversible error. Where, as here, the defendant has objected to a claimed error in the trial court, an appellate court reviews error under a harmless error standard set forth in Crim.R. 52(A). *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15; *Sorrels*, 71 Ohio App.3d 162, 165, 593 N.E.2d 313.

{¶41} The harmless error standard is "'significantly more favorable to the defendant.'" *Id.*, quoting *United States v. Curbelo*, 343 F.3d 273, 286 (4th Cir. 2003). Under a harmless error standard, the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant. *Id.* "An appellate court must reverse a conviction if the government does not satisfy this burden * * *." *Id.* "Whether the defendant's substantial rights were affected depends on whether the error was prejudicial, i.e., whether it affected the outcome of the trial." *State v. Jones,* 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 18, citing *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. Where the State fails to meet its burden, the appellate court must reverse the conviction. *Perry* at ¶ 15.

{¶42} Although evidence of appellant's hip fracture could have undermined the reliability of the OLS and WAT tests, this would not warrant reversal. Appellant refused transport to the hospital and was only taken to the emergency room because the jail refused to admit him until he had been medically cleared. Kronander's dash camera shows that he asked appellant if "you have any problems with your legs at all?" Further,

12

appellant did not begin to complain of hip pain until after his arrest. While appellant claims that his OLS test was compromised by him supporting his weight on his fractured hip, the OLS test allows the subject to choose either leg to stand on and Kronander instructed appellant to choose whichever leg he felt more comfortable with using for the test. This undermines appellant's claim that his hip fracture was so severe that he could not perform these tests and that their reliability was compromised.

{¶43} One factor tending to undermine the reliability of the OLS and WAT tests was that appellant was discharged from the hospital with crutches. However, the jury was made aware of this through Kronander's testimony. Therefore, regardless of whether appellant's specific medical diagnosis was made part of the record, testimony made the jury aware of his need for crutches and thus the potential that his injuries compromised the reliability of the OLS and WAT tests. This ameliorates much of appellant's concern that the jury assessed his performance on the WAT and OLS tests without regard to injuries sustained in the crash.

{¶44} More importantly, the totality of the evidence was indicative of appellant's impairment. Appellant was driving so erratically that Smith described it as the worst he had ever seen, and he believed appellant was intoxicated. Smith said he saw appellant throwing glass bottles from the car after he crashed. Appellant admitted consuming Hennessey to Black. Several witnesses stated he had an odor of alcoholic beverage emanating from his person, had glassy, bloodshot eyes, and seemed "out of it." Further, the HGN test revealed six out of six possible clues which indicates a high probability of intoxication. These factors indicate exclusion of the police report offered by appellant was harmless.

Case No. 2022-L-105

{¶45} Accordingly, appellant's first assignment of error is without merit.

{¶46} Appellant's second assignment of error states:

{¶47} "[2.] THE TRIAL COURT ERRED IN PERMITTING THE STATE OF OHIO TO INTRODUCE EVIDENCE OF THE VERTICAL GAZE NYSTAGMUS TEST AFTER THE STATE OF OHIO FAILED TO ESTABLISH SUBSTANTIAL COMPLIANCE PURUSUANT TO R.C. 4511.19."

{¶48} Appellant argues that the trial court erred by allowing Kronander to testify as to appellant's VGN results. He asserts that Kronander's testimony about the purpose of the test was incorrect by suggesting that a positive VGN result could be indicative that an individual had consumed a large amount of alcohol based on that person's tolerance level.

{¶49} R.C. 4511.19(D)(4)(b) requires the State to show by clear and convincing evidence that a law enforcement officer administering field sobriety tests "administer the test in substantial compliance with the testing standards for any reliable, credible and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]" If the State meets its burden, then the officer may testify concerning the results of the SFST, the State may introduce the results of the SFST, and the admissible evidence or testimony shall be admitted and given appropriate weight by the trier of fact. R.C. 4511.19(D)(4)(b).

{¶50} However, we are unable to assess whether Kronander's description of the VGN was accurate or not because the NHTSA Manual, which Kronander was trained on and which describes the purpose and methodology of each of the SFSTs, was not

14

admitted into evidence. Appellant offers no basis for us to conclude that Kronander's description was incorrect based on the testing standards for reliable field sobriety tests in effect at the time the tests were administered. Although appellant cites several trial court decisions suggesting the VGN is not an appropriate test to assess alcohol consumption, each of those cases was decided more than twenty years ago. In *State v. Wright*, 11th Dist. No. 2013-L-088, 2015-Ohio-2600, 38 N.E.3d 485, we concluded that where an officer substantially complied with the procedures for performing the VGN outlined in the NHTSA manual, the results of the VGN are admissible. *Id.* at ¶ 67.

{¶51} More importantly, appellant did not challenge the admissibility of the VGN test in a pre-trial motion to suppress. The proper method to challenge the admissibility of the State's evidence to prove an OVI charge, claiming the State did not procure evidence according to applicable standards or regulations, is through a Crim.R. 12(C)(3) motion to suppress evidence. *State v. Beavers*, 11th Dist. Ashtabula No. 2019-A-0028, 2020-Ohio-69, ¶ 15; *City of Defiance v. Kretz,* 60 Ohio St.3d 1, 5, 573 N.E.2d 32 (1991). As applied to the HGN test, a defendant who "seeks to challenge whether the test was administered in substantial compliance with NHTSA standards * * * has waived that challenge by not filing a motion to suppress." *Beavers* at ¶ 17; *See State v. French*, 72 Ohio St.3d 446, 450, 650 N.E.2d 887 (1995) (holding that a failure to challenge the admissibility of a chemical test through a pretrial motion waives the requirement on the State to lay a foundation for the admissibility of the test results at trial.) We see no reason why the same standard should not similarly apply to the VGN portion of the SFSTs, resulting in appellant's waiver.

15

Case No. 2022-L-105

{¶52} At trial, Kronander testified as to how to administer the VGN test and stated he administered all of the SFSTs based on his training in accordance with NHTSA standards. He also said the VGN test is used as "more of just an observation than a clue," that the VGN does not factor into the administration of the HGN test, and that he did not observe any nystagmus while performing the VGN. Therefore, assuming arguendo the trial court erred in admitting testimony about the VGN, such error would be harmless.

{¶53} Accordingly, appellant's second assignment of error is without merit.

{¶54} Appellant's third assignment of error states:

{¶55} "[3.] APPELLANT WAS CONVICTED UPON INSUFFICIENT EVIDENCE TO DETERMINE HE WAS UNDER THE INFLUENCE OF ALCOHOL WHILE OPERATING A MOTOR VEHICLE, AND THUS WAS NOT CARRYING A FIREARM IMPROPERLY."

{¶56} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury's verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶57} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails

16

a review of the elements of the charged offense and a review of the State's evidence. *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

**{¶58}** R.C. 4511.19(A)(1)(a) provides: "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply: (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶59}** R.C. 2923.16(D)(1) provides: "No person shall knowingly transport or have a loaded handgun in a motor vehicle if, at the time of that transportation or possession, any of the following applies: (1) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶60}** Here, a rational trier of fact could find the essential elements of each count proven beyond a reasonable doubt. The elements of each offense were supported by the testimony of multiple witnesses and those witnesses' testimony was further bolstered by the corroborating dash camera and body camera evidence which demonstrated appellant's state of impairment and that he transported a handgun in his vehicle while impaired.

**{¶61}** As described under our analysis of the first assignment of error, appellant's driving was erratic, and Smith believed he was intoxicated. Smith said he saw appellant throwing glass bottles from the car after he crashed, and appellant admitted to consuming alcohol. The HGN test revealed six out of six possible clues, which indicates a high probability of intoxication. The evidence demonstrates appellant operated a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of both. Further,

17

the State presented evidence that appellant had a loaded, operable, firearm which he transported in his vehicle while under the influence.

{¶62} Accordingly, appellant's third assignment of error is without merit.

{¶63} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2022-L-105