[Cite as *State v. Cleveland*, 2024-Ohio-2126.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-T-0091** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ANTONIO CLEVELAND, | Trial Court No. 2022 CR 00423 |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: June 3, 2024
Judgment: Reversed, vacated, and remanded

*Dennis Watkins,* Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, Stow, OH 44224 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Antonio Cleveland ("appellant"), appeals his conviction for fifth degree felony Theft from the Trumbull County Court of Common Pleas. We reverse, vacate, and remand this case for a new trial.

{¶2} On June 28, 2022, appellant was indicted on one count of Theft, a felony in the fourth degree. The indictment arose from the theft of six electric powered scooters that were taken across the street from a convenient store located on Larchmont Avenue in Warren, Trumbull County.

**{¶3}** A jury trial was held on July 31, 2023. At trial, Tina Davis ("victim"), Detective Frank Tempesta ("Detective Tempesta") and Detective Peter Goranitis ("Detective Goranitis"), both from the Warren City Police, all testified. Testimony was also heard from appellant.

**{¶4}** The victim testified that she was fleet manager for the scooters when they were taken. The scooters were routinely dropped off at various locations throughout Warren for people to rent and use within city limits. The victim placed the six brand new scooters valued at $1,500 each (a total value of $9,000) at the location on Larchmont Avenue. Each scooter was equipped with a GPS system that would alert the victim of the scooter's whereabouts through an app. Within hours, the victim received an alert that the scooters had been taken to U-Pull-It scrap yard in Youngstown. The scrap yard was closed when the victim arrived to recover the scooters, so she called the police for assistance. The victim testified that she was not able to get the scooters until the morning. By that time, two of the scooters had been crushed and three others were "severely vandalized." One of the scooters was never recovered. The victim testified that while at the scrap yard, an employee from U-Pull-It sent an image to her and her husband's cell phone containing a photograph of the receipt the scrap yard had generated for the recent scooter transaction.

**{¶5}** At trial, the State introduced eight photograph images of the scooters taken at the scrap yard when the victim's husband went there to recover them (State's Exhibits 1 through 8). The State introduced a video taken from the convenience store across the street from where the scooters were stolen, identified as State's Exhibit 9. The State also introduced exhibits 10, 11, and 12, which depicted the cell phone image of the receipt

2

from U-Pull-It, an image of a portion of that same receipt showing an expired driver's license belonging to appellant along with a signature, and an enlarged image of the same license. The receipt detailed a $27 cash transaction dated April 28, 2022, between the scrap yard and appellant.

{¶6} At trial, Detective Goranitis testified that he had gone to appellant's residence on May 4, 2022, to place him into custody. When Detective Goranitis informed appellant he was there to arrest him, appellant stated he believed that the warrant was for his son, who shares the same name. Detective Goranitis confirmed the appellant's birthdate and that the warrant was in fact for him and not his son. Appellant asked what the warrant was for, and Detective Goranitis advised appellant the warrant was for theft. Detective Goranitis stated, "I believe Detective Hubbard told him that it had something to do with a scrap yard out of Youngstown called Pull It In or Pull It Up and that there was some scooters taken there. At that time [appellant] said that he had scrapped some scooters and some bicycles and got like $20 for them." Detective Goranitis testified that he had not yet mirandized appellant when he made the statement, so he did not ask more questions.

{¶7} Detective Goranitis further testified that while at appellant's residence he observed that there was a black truck in appellant's driveway.

{¶8} Detective Tempesta testified that he was assigned this case to investigate. Detective Tempesta stated that he received an email copy of the receipt from U-Pull-It from a patrolman at the Youngstown Police Department. The detective explained that the Youngstown Police Department had gone directly to U-Pull-It and retrieved the receipt from them.

3

**{¶9}** Detective Tempesta testified that his first suspect in this case was the appellant's son because the Youngstown Police Department had previous theft reports for him. His focus then turned to appellant when the receipt was obtained from U-Pull-It and after viewing the black truck on the surveillance video from the convenience store. Detective Tempesta testified that there was no visible license plate on the truck that could be observed in the video. The State's Exhibits 10, 11, and 12 (images from the receipt detail) were also shown to Detective Tempesta at trial.

**{¶10}** The State then introduced State's Exhibit 9, video surveillance footage from the convenience store across the street from where the scooters were taken. Detective Tempesta testified that the video depicted an individual wearing a vest, driving a black truck, driving up and loading the scooters into the bed of the truck. Detective Tempesta testified that you could not identify the defendant from the video. The detective stated that when he ran appellant's name through the Ohio Law Enforcement Gateway ("OHLEG") vehicle registration database, he discovered a 2004 black Dodge Ram pick-up truck was registered to appellant.

**{¶11}** Appellant testified last at trial. Appellant stated that he is 61 years old, and that he has had numerous ailments. Appellant explained that he has had brain tumors that were removed, colon cancer, sciatic nerve damage to his back and legs, and that he has seizures. Appellant stated that he is on disability and that he supplements his income by taking items to the scrap yard. Appellant said that he never made any admission to Detective Goranitis about scrapping scooters, but instead volunteered that he had scrapped bicycles that a neighbor offered him after cleaning out their garage. Appellant testified that his relationship with his son is not good because he has stolen a lot of things

4

from appellant. Appellant stated that he had been to U-Pull-It scrap yard in Youngstown before, and that he uses his truck to scrap things there. When the State questioned appellant about a prior misdemeanor conviction for petty theft he responded, "I ain't never been to jail for that. That's my son. * * * He uses my name and my date of birth. * * * What you need to do is your, do your homework because that's my son."

{¶12} The jury deliberated and returned with a verdict. Appellant was instructed by defense counsel to return to the court for the verdict but did not appear. Over objection by defense counsel, the verdict was read in appellant's absence. The jury found appellant guilty of Theft, indicating a finding that the value of the property involved in the theft to be between $1,000 and $7,5000, thereby lessening appellant's felony charge from fourth degree to the fifth degree.

{¶13} A sentencing hearing was then held on October 18, 2023. On October 19, 2023, an entry on sentence was filed, indicating that appellant was found guilty of a felony of the fourth degree. The trial court erred as the jury's verdict found appellant guilty of a fifth degree rather than a fourth degree felony theft. Appellant was sentenced to 15 days in jail, five years of community control, 100 hours of community service, and was ordered to pay $15,000 in restitution to the victim.

{¶14} Appellant timely appeals and asserts three assignments of error.

{¶15} [1.] "Appellant received ineffective assistance of trial counsel by virtue of counsel's failure to object to $15000.00 of restitution being ordered."

{¶16} [2.] "Appellant's convictions are against the manifest weight of the evidence."

5

Case No. 2023-T-0091

{¶17} [3.] "The trial court erred as a matter of law by admitting documentary and photographic evidence which was not properly authenticated, as well as hearsay testimony concerning that evidence."

{¶18} As appellant's third assignment is dispositive, we will address the assignments of error out of order.

**Improper Admission of Hearsay Evidence**

{¶19} Appellant's third assignment of error contends that the trial court erred in admitting hearsay evidence that was improperly authenticated.

**Authentication**

{¶20} Laying a foundation requires that the attorney elicit from the witness details to confirm the item of evidence is authentic. In other words, it reliably is what it purports to be. The testimony of a witness with knowledge is enough to meet the low threshold required to authenticate an item. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A).

> This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity. (Citation omitted.) Instead, the state only needs to demonstrate a 'reasonable likelihood' that the evidence is authentic. (Citation omitted.) Such evidence may be supplied by the testimony of a witness with knowledge. Evid.R. 901(B)(1).

*State v. Meeks*, 11th Dist. Geauga No. 2023-G-0016, 2023-Ohio-4606, ¶ 52.

Case No. 2023-T-0091

**Hearsay**

{¶21} Hearsay is an inadmissible out of court statement used to prove the truth of the matter asserted. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.

{¶22} Evid.R. 803(6) provides an exception to the rule against hearsay:

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *

{¶23} "To be admissible under Evid.R. 803(6), * * * 'a business record must display four essential elements: (1) it must have been kept in the regular course of business; (2) it must stem from a source who had personal knowledge of the acts, events, or conditions; (3) it must have been recorded at or near the time of the transaction; and (4) a foundation must be established by the testimony of either the custodian of the record or some other qualified person.' *State v. Comstock* (Aug. 15, 1997), 11th Dist. No. 96-A-

7

0058, 1997 Ohio App. LEXIS 3670, 17-18" *State v. Jackson*, 11th Dist. Ashtabula No. 2007-A-0079, 2008-Ohio-6976, ¶ 27.

**{¶24}** Hearsay can, under some circumstances be admissible, when used to prove something other than the truth of the matter asserted. "The right to confrontation applies to all testimonial statements." *State v. Glavic*, --- N.E.3d ---- (11th Dist.), 2024-Ohio-209, ¶ 31 citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, the "Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Id.* at 32, citing *Crawford* at 59, fn.9.

### Standard of Review

**{¶25}** This Court has held that a trial court's decision to admit evidence, generally, is reviewed under abuse of discretion. *Meeks* 2023-Ohio-4606, at ¶ 52, citing *State v. Dotson*, 11th Dist. Trumbull No 2017-T-0103, 2019-Ohio-2393, 139 N.E.3d 430, ¶ 49. However, the improper admission of inadmissible hearsay evidence is a question of law, therefore, an appellate court reviews hearsay under a de novo standard of review. *Morford v. Morford*, 2018-Ohio-3439, ¶ 12, 118 N.E.3d 937 (11th Dist.).

### The Victim's Testimony

**{¶26}** The State questioned the victim regarding Exhibits 10, 11, and 12. During the exchange involving the receipt detail from U-Pull-It, the first threshold of authentication was appropriately cleared.

> THE STATE: All right. Looking at State's Exhibits 10 through 12, focusing on 10, you said you had seen that before?
>
> VICTIM: Yep.
>
> THE STATE: Do you know where that document came from?

8

Case No. 2023-T-0091

VICTIM: It came from Youngtown U-Pull-It. It was a document given to me so that I knew exactly who it was that took my scooters.

THE STATE: How did you get that document?

VICTIM: The man from the Youngstown U-Pull-It gave it to my husband to put it on the table. He sent me the information and that's how I got the document.

THE STATE: So you received it directly from - -

VICTIM: From a phone.

THE STATE: - - the business?

VICTIM: From the phone from the business, yes.

THE STATE: And that occurred on the premises of the U-Pull-It business?

VICTIM: Yes, the very next day.

THE STATE: And does it have any identifying marks on the document that indicates where it was from?

VICTIM: It says at the top Youngstown U-Pull-It. * * *

THE STATE: And does it state the dollar amount that was paid out?

VICTIM: $27 or $27.21. Said paid by cash, $27.

THE STATE: Now I'm going to show you Exhibit 11. Do you - - what is that?

VICTIM: That's the copy of the ID that was used to scrap the scooters.

THE STATE: And that is - - is that essentially a blowup of Exhibit 10?

VICTIM: Yes. And so is this.

Case No. 2023-T-0091

THE STATE: Now I'm going to show you Exhibit 12. Is that a blow up of the license from Exhibit 10?

VICTIM: Yes, sir.

THE STATE: No further questions, Judge.

{¶27} The victim's testimony becomes problematic when she continues to testify to the document's contents. The victim describes the dollar amount of the transaction, the identification used by the person who scrapped the scooters, and that appellant was a party to the transaction. This material, identifying information constitutes hearsay. This information is the linchpin of the State's case as it is the primary evidence that identifies appellant as a suspect. These are components of the document that go beyond establishing that the document is in fact the document that victim believes it to be. At this point, her testimony speaks only to the truth of the information reflected in the document as a business record without satisfying the foundational components of Evid.R. 803(6). The victim testified that she did not create the document herself during the regular course of business, but that she instead, received the document from someone at U-Pull-It. Victim was not a qualified witness to testify as to the receipt as a business record, and could not lay a foundation to establish these exhibits as business records. No other purpose was offered by the State for the use of this testimony, and it falls under no other hearsay exception. Therefore, the contents of State's Exhibits 10 through 12 were improperly admitted as it constituted inadmissible hearsay.

**Detective Tempesta's Testimony**

{¶28} A second attempt to authenticate the same hearsay was had during Detective Tempesta's testimony. Again, the State engages in a similar line of questioning that goes outside the scope of the witness knowledge.

10

Case No. 2023-T-0091

THE STATE: I'll show you what's been marked as State's Exhibits 10, 11, and 12, ask you to look at those and ask you if you recognize those?

DETECTIVE TEMPESTA: Yes.

THE STATE: What are they?

DETECTIVE TEMPESTA: They are tickets receipt detail from U-Pull-It on the transaction.

THE STATE: And are those the documents you received directly from Youngstown Police Department?

DETECTIVE TEMPESTA: That is the document I received.

THE STATE: Is it a true and accurate depiction of what you received from Youngstown?

DETECTIVE TEMPESTA: That is correct.

THE STATE: And that's the document they received from U-Pull-It?

DETECTIVE TEMPESTA: Yes. * * *

THE STATE: And does it list the value of the items on the receipt?

DETECTIVE TEMPESTA: $27.00.

THE STATE: Does it list a suspect or individual who was related to that transaction?

DETECTIVE TEMPESTA: It does.

THE STATE: And who is that?

DETECTIVE TEMPESTA: Antonio D. Cleveland.

{¶29} The State successfully crosses the first threshold of authentication. The State goes beyond Detective Tempesta's personal knowledge however, when questioning the witness about the transaction amount, and the identity of the suspect named on the receipt detail. Detective Tempesta testified that he did not create the document but that he received it from another police officer. Detective Tempesta was not qualified to testify to truth of the document's contents.

11

Case No. 2023-T-0091

**{¶30}** Though Evid.R. 803(6) provides an exception to the rule against hearsay by way of authentication of business records, the State failed to produce any witness or certifying document to authenticate the inadmissible hearsay as a business record exception. Therefore, the trial court erred when it admitted State's Exhibits 10 through 12.

### Harmless Error

**{¶31}** When a reviewing court identifies an error on appeal, it must conduct a harmless error analysis to determine if the error affected the substantial rights of the criminal defendant. *State v. Morris*, 141 Ohio St.3d 399, 24 N.E.3d 1153, 2014-Ohio-5052, ¶ 23.

> Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: 'Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.' * * * Furthermore, if there is 'a "[d]eviation from a legal rule," courts undertake a "'harmless error'" inquiry—to determine whether the error "affect[ed] substantial rights of the criminal defendant.' (citation omitted). "The term 'substantial rights' has been interpreted to require that ""the error must have been *prejudicial.'* (Emphasis added.)"'(citation omitted)*", quoting *Olano* at 734, 113 S.Ct. 1770. If a court determines that the error did not affect the defendant's substantial rights, then the error is harmless and '"shall be discarded." *Id.,'* quoting Crim.R. 52(A).

*Id.* at 23.

**{¶32}** In instant case, there was minimal circumstantial evidence presented that a jury could have factored into its decision that linked the appellant to the crime and supported a conviction. However, the evidence presented in State's Exhibits 10 through 12 clearly established appellant's identity. This Court's reading of the trial record reveals that these exhibits constituted the State's primary evidence linking appellant as the individual responsible for the theft of the scooters. All other inferences as to appellant's

12

identity stemmed from the improperly admitted evidence, and as Detective Tempesta testified, it was not until the receipt was received that appellant's name was searched in OLEG and he then became a suspect.

{¶33} "[T]he Ohio Supreme Court has noted, the admission of improper evidence is harmless if the remaining evidence provides overwhelming proof of the defendant's guilt." *State v. Cochran*, 11th Dist. Geauga No. 2006-G-2697, 2007-Ohio-345, ¶ 16, quoting *State v. Sage* (1987), 31 Ohio St.3d 173, 181, 510 N.E.2d 343.

{¶34} Here, the State has not produced overwhelming proof of appellant's guilt absent the inadmissible hearsay regarding the scrap yard receipt. Appellant's substantial rights were prejudiced because, without the improperly admitted evidence, there was minimal evidence to link appellant and the otherwise unidentified person who scrapped the scooters. For this reason, it is not necessary to analyze if the video surveillance footage (State's Exhibit 9) or the photograph images from U-Pull-It (State's Exhibits 1 through 8) were improperly admitted.

{¶35} Accordingly, based on the foregoing, appellant's third assignment of error has merit. We decline to review the remaining assignments of error. We reverse and vacate the decision of the Trumbull County Court of Common Pleas and remand for a new trial.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.