[Cite as *State v. Addicott*, 2025-Ohio-1785.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

          Plaintiff-Appellee,

- vs -

TRENT ADDICOTT,

          Defendant-Appellant.

CASE NO. 2024-T-0076

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2024 CR 00438

---

### OPINION AND JUDGMENT ENTRY

Decided: May 19, 2025
Judgment: Affirmed in part, reversed in part, and remanded

---

*Dennis Watkins*, Trumbull County Prosecutor, *Ryan J. Sanders* and *Charles L. Morrow*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, P.O. Box 1562, 3435 Kent Road, Stow, OH 44224 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Trent Addicott, appeals his judgment of conviction from the Trumbull County Court of Common Pleas. Following a jury trial, Appellant was convicted on two counts of Pandering Sexual Obscenity Involving a Minor, second-degree felonies in violation of R.C. 2907.321; four counts of Pandering Sexually Oriented Matter Involving a Minor, second-degree felonies in violation of R.C. 2907.322; and five counts of Sexual Conduct with an Animal, second-degree misdemeanors in violation of R.C. 959.21 and 959.99.

{¶2}    Appellant has raised one assignment of error arguing that the trial court repeatedly permitted the introduction of hearsay evidence, which violated his rights under the Confrontation Clauses of the United States and Ohio Constitutions.

{¶3}    Having reviewed the record and the applicable caselaw, we find Appellant's assignment of error to have some merit. First, admission of the records that were introduced linking an I.P. address to Appellant was not inadmissible hearsay. They were properly authenticated records kept in the regular course of business. Next, Appellant's arguments that three CyberTipline Reports and related testimony violated his confrontation rights have some merit. They were not offered for the proof of the matter asserted as to Counts 1 and 2 and 7 through 11. But they were offered in part to prove the truth of the matters they asserted related to Counts 3 through 6. The CyberTipline Reports were not properly admitted as business records, and we cannot determine that the records were nontestimonial. Nor did any exception to the general rule that hearsay is not admissible apply to them. Evid.R. 802. So, their admission was error.

{¶4}    Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### Substantive and Procedural History

{¶5}    On June 12, 2024, Appellant was indicted on the following: Counts 1 and 2: Pandering Sexual Obscenity Involving a Minor, second-degree felonies in violation of R.C. 2907.321(A)(1); Counts 3 through 6: Pandering Sexually Oriented Matter Involving a Minor, second-degree felonies in violation of R.C. 2907.322(A)(1); and Counts 7 through 11: Sexual Conduct with an Animal, second-degree misdemeanors in violation of R.C. 959.21 and 959.99. Appellant pled not guilty.

{¶6} On August 27, 2024, the matter proceeded to jury trial. The following facts and evidence were adduced at trial:

{¶7} The State called Arabelle Skelly, an analyst with the Cuyahoga County Prosecutor's Office working for the Ohio Internet Crimes Against Children Task Force. Skelly said that she receives "CyberTipline Reports" from the National Center for Missing and Exploited Children (NCMEC). When Electronic Service Providers (ESPs), such as Snapchat, Instagram, and Facebook, identify potential Child Sexual Abuse Material (CSAM) on their site, they report the information to the NCMEC. It creates a CyberTipline Report and forwards it to an Internet Crimes Against Children Task Force (ICAC) office where the suspected user is believed to be located. Upon receipt of a Report, Skelly takes steps to determine who the reported user is. If she determines the possible identity of the user associated with the reported content, she forwards that information to the local law enforcement agency.

{¶8} Skelly received three CyberTipline Reports regarding the same I.P. address. They each related to a CyberTip Snapchat had submitted to NCMEC of "apparent violations" of federal criminal statutes involving child pornography. The State introduced two of them, Exhibits 19 and 20. Each Exhibit stated the time of the reported incident, which, according to Skelly, was when the user "saved, shared, or uploaded" the content. Each Exhibit also listed the reported user's account information, including date of birth, email address, username, and I.P. address. The trial court overruled Appellant's objections to these Exhibits.

{¶9} Exhibits 19 and 21 each included digital files that contained images and/or videos of sexual material involving a prepubescent child.

{¶10} Skelly said that upon receiving the Reports, she had a grand jury subpoena issued to Charter Communications, the internet service provider for the I.P. address shown in the Reports. It demanded production of subscriber information for that I.P. address. The trial court overruled Appellant's objection to this testimony.

{¶11} Skelly stated that in response to the subpoena, Charter produced records for the suspected I.P. address with a sworn certification that they were "records kept in the ordinary course of the . . . regularly conducted business of Charter Communications" and generated by Charter Communications. They were identified and marked as Exhibit 20. The document indicated that Appellant was the subscriber and detailed his home address, phone number, and email address. After receiving this information, Skelly forwarded the case to the Howland Township Police Department for further investigation.

{¶12} The State called Detective Nicholas Brancaccio of the Howland Township Police Department. Detective Brancaccio said that he received an email from the Ohio Internet Crimes Against Children Task Force in March 2024 with information about Appellant. He verified Appellant's residence and obtained a search warrant for all electronic devices within Appellant's residence.

{¶13} On May 30, 2024, he searched Appellant's residence and told Appellant that the search was for CSAM. Appellant said that any such material would be on his iPad. He also said that his girlfriend had discovered CSAM on one of his devices about a year prior. Appellant disclosed the password to unlock his devices. Officers recovered Appellant's cell phone, an iPad, a hard drive, and a flash drive.

{¶14} Detective Brancaccio examined the iPad and iPhone and found the devices contained photographs of Appellant and his two-year-old daughter while Appellant was

engaging in sexual acts and in a state of nudity. The State introduced these images as Exhibits 1 and 2. Detective Brancaccio said that the background, flooring, and contents of the images indicated they were taken at Appellant's residence. Detective Brancaccio also discovered five videos depicting Appellant engaging in bestiality with the family dog. The State introduced these videos as Exhibits 7-11. Objections to all seven of these Exhibits and their use were overruled. Detective Brancaccio also submitted the devices to the Warren City Police Department for further forensic examination.

{¶15} Finally, Detective Brancaccio testified that during his work he reviewed State's Exhibits 3 through 6 and 19 and 21.

{¶16} The State called Detective Michael Altiere of the Warren City Police Department. Detective Altiere said that he is trained as a cell phone forensic specialist and extracted the materials from the iPhone and iPad using the Cellebrite Physical Analyzer. Detective Altiere said that he conducted a full analysis of the devices and provided a report identifying anything that would be related to CSAM and the device user. Detective Altiere said that the iPhone and iPad had user information, such as email addresses and account usernames, that related to Exhibits 19 and 21 and that identified Appellant as the owner of the phone.

{¶17} The State rested and submitted their exhibits. Appellant objected to several exhibits. The trial court overruled Appellant's hearsay objection to Exhibits 19 and 21. The trial court overruled the objection to Exhibit 20, the certified response from Charter with Appellant's account information, reasoning the document was properly authenticated and certified as a business record.

{¶18} The jury found Appellant guilty on all counts. On September 3, 2024, the trial court sentenced Appellant to an indefinite sentence of eight to twelve years in prison on Count 1; eight years in prison on Count 2, to be served consecutively to Count 1; eight years in prison on Counts 3 through 6, to be served concurrently to each other but consecutively to Count 1; and a 90-day jail term on Counts 7 through 11, to be served concurrently, for an aggregate prison sentence of 24-28 years.

{¶19} Appellant timely appealed raising one assignment of error.

## Assignment of Error and Analysis

{¶20} Appellant's sole assignment of error states: "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REPEATEDLY PERMITTING HEARSAY EVIDENCE WHICH WAS NOT PROPERLY AUTHENTICATED IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE UNITED STATES CONSTITUTION."

{¶21} Appellant argues that the trial court erred by overruling Appellant's repeated objections to the introduction of testimony and documents "purportedly linking Appellant to the unlawful photographic and other materials involved in this case." Citing *State v. Lautanen*, 2023-Ohio-1945 (11th Dist.), Appellant contends that the CyberTipline Reports and related testimony and the responses to the grand jury subpoena (a) were hearsay and (b) their admission violated his constitutional rights to confront witnesses against him. We consider these issues in turn.

{¶22} This case turns on the interplay of authentication, hearsay, and the Confrontation Clause. Muddying the waters is that the CyberTipline Reports were used for multiple purposes, some of which did not have a bearing on the hearsay rules or the Confrontation Clause.

Case No. 2024-T-0076

**Authentication:**

{¶23} Broadly, both the CyberTipline Reports and the Charter account information were authenticated records. Skelly's testimony established that the CyberTipline Reports were what they purported to be. *See* Evid.R. 901(A). However, mere authentication that the records were what they purported to be does not end the inquiry. The remaining questions are whether the CyberTipline Reports and testimony about them were admissible and whether their use was testimonial in nature and thus violated the Confrontation Clause.

**Hearsay:**

{¶24} This Court has held that whether evidence constitutes inadmissible hearsay is a question of law subject to de novo review. *Morford v. Morford*, 2018-Ohio-3439, ¶ 12 (11th Dist.). "'Determining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion . . . , an appellate court should scrutinize the [trial court's] finding under a de novo standard of review.'" *State v. Hartman*, 2020-Ohio-4440, ¶ 22, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, § 4.10 (2d Ed. 2019). This is because Evid.R. 802 specifically provides that "[h]earsay is not admissible." Therefore, "the trial court's decision to admit hearsay is not governed by the test of abuse of discretion, which the Supreme Court applies to instances where the trial court's evidentiary rulings relate to matters expressly or implicitly within its discretion, as in rulings on relevancy (Evid.R. 402 and 403) or expert testimony (Evid.R. 702)." *State v. Sorrels*, 71 Ohio App.3d 162, 165 (1st Dist. 1991).

**{¶25}** Here, the documents produced in Charter's response to the grand jury subpoena and the testimony about them were not inadmissible hearsay. *See State v. Hood*, 2012-Ohio-6208, ¶ 4; Evid.R. 803(6).

**{¶26}** State's Exhibit 20 contained an affidavit from Charter's records custodian certifying the information contained in the record was true and correct based on the records custodian's personal knowledge. The records were kept in the ordinary course of the regularly conducted business of Charter Communications, they were generated by Charter Communications, and the attached records were originals or exact duplicates of the originals. Although the State did not call a record's custodian from Charter to testify, the certification stating that the documents were kept in the regular course of business satisfies the requirements of Evid.R. 803(6). And, the documents were self-authenticating. *See* Evid.R. 902(11) (certified copies of domestic records of a regularly conducted activity "that meet[] the requirements of Evid.R. 803(6), as shown by a certification of the custodian or another qualified person" are self-authenticating documents). *See State v. Cleveland*, 2024-Ohio-2126, ¶ 30 (11th Dist.); *United States v. Yeley-Davis*, 632 F.3d 673, 680 (10th Cir. 2011).

**{¶27}** Next, we address Appellant's argument that the CyberTipline Reports (Exhibits 19 and 21) were hearsay. The Protect Our Children Act of 2008 requires that ESPs report

> "any facts or circumstances from which there is an apparent violation of" specified criminal offenses involving child pornography. 18 U.S.C. § 2258A(a)(1)–(2). ESPs report to the NCMEC, a non-profit organization that is statutorily required to operate the "CyberTipline," which is an online tool that gives ESPs "an effective means of reporting internet-related child sexual exploitation." 34 U.S.C. § 11293; *see* 18 U.S.C. § 2258A(a)(1). NCMEC is required to make every "CyberTip" it receives available to federal law enforcement. 18 U.S.C. § 2258A(c)(1). ESPs that fail to report "apparent

Case No. 2024-T-0076

violation[s]" of the specified criminal statutes involving child pornography face substantial fines. *Id.* § 2258A(a)(1), (e).

*United States v. Rosenow*, 50 F.4th 715, 725 (9th Cir. 2022) (addressing whether federal law transform the ESPs' private searches into governmental action).

**{¶28}** First, as to Counts 1-2 and 7-11: the CyberTipline Reports had nothing to do with the images found on Appellant's phone or proving the elements of these crimes. In other words, they were not offered to prove the truth of what they contained.

**{¶29}** Counts 1 and 2, and 7 through 11 were based on images Detective Brancaccio found on Appellant's phone. The CyberTipline information related to different images Snapchat reported as being "saved, shared, or uploaded on its website." It was offered on these seven counts to explain how Skelly began her investigation, the steps she took to verify that the material appeared to be CSAM, and the steps she took to determine the possible address for the user associated with the CSAM on the flagged Snapchat account. *See State v. Ricks*, 2013-Ohio-3712, ¶ 18. "[E]xtrajudicial statements made by out-of-court declarants offered to explain the subsequent investigative conduct of law enforcement are generally admissible, because the statements are not offered to prove the truth of the matter asserted." *State v. Burton*, 2017-Ohio-322, ¶ 21 (4th Dist.), citing *Ricks* at ¶ 18.

**{¶30}** Appellant argues that the CyberTipline Report stated a date of incident which indicated when the material was "shared, saved, or uploaded." He argues that the State relied on the CyberTipline Reports to prove when the material was "shared, saved, or uploaded" and used this information to prove the truth of the matter asserted. However, this argument fails in reference to Counts 1-2 and 7-11. These Counts were based on the images and videos that Appellant created on, and were retrieved from, Appellant's own

Case No. 2024-T-0076

devices. There was no evidence that Exhibit 19 or 21 applied or related to them. The State relied on Detective Brancaccio's testimony to establish that Appellant created the CSAM found on his devices. The CyberTipline Reports were not hearsay as to these Counts.

{¶31} Second, as to Counts 3-6: just as Exhibits 19 and 21 (the CyberTipline Reports) were not hearsay as to Counts 1, 2, and 7-11, to the extent the State used Exhibits 19 and 21 to establish the genesis of an investigation for Counts 3-6, the result is the same. *See Ricks* at ¶ 18; *Burton* at ¶ 21.

{¶32} However, the Reports identify specific images, which a person, then unknown, shared, saved, or uploaded on specific dates. They also set forth Appellant's personal identifying and other information linking Appellant to the targeted account. All of that information was clearly offered to prove the truth of what the Exhibits said, which in turn was key to proving Appellant committed the crimes charged in Counts 3-6. As to these counts, the CyberTipline Reports were hearsay. We therefore turn to whether they were admissible under an applicable hearsay exception.

{¶33} The State argues that Exhibits 19 and 21 qualified as business records under Evid.R. 803(6) and therefore were admissible hearsay.

{¶34} We disagree. As discussed above, the first requirement for the admissibility of a business record is whether it has been properly authenticated. *See State v. Lawson*, 2020-Ohio-3008, ¶ 13 (10th Dist.) ("In short, the question of whether the data qualifies as a 'business record' also requires a finding that the data is properly authenticated under Evid.R. 901."). However, to qualify for admission as a business record under Evid.R. 803(6) the following four elements must be established:

Case No. 2024-T-0076

(i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition [recorded]; (iii) it must have been [made] at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some "other qualified witness."

*State v. Davis*, 2008-Ohio-2, ¶ 171, quoting Weissenberger, *Ohio Evidence Treatise*, § 803.73, at 600 (2007). "A 'qualified witness' for this purpose would be someone with 'enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.'" *Hood*, 2012-Ohio-6208, at ¶ 40, quoting 5 McLaughlin, *Weinstein's Federal Evidence*, § 803.08(8)(a) (2d Ed. 2009).

**{¶35}** Ms. Skelly was the witness through whom the State introduced the Exhibits. She was not a custodian of the records. She did not prepare or keep them. Although she testified generally about how CyberTipline Reports are created, she offered no testimony in that respect for the Exhibits themselves. Moreover, she offered no testimony concerning the record-keeping system of the business that supposedly created the Exhibits (NCMEC) or provided the information they contained (Snapchat). While it is conceivable that Skelly, Detective Brancaccio, or another witness could have satisfied the other qualified witness standard under Evid.R. 803(6), the testimony at trial did not satisfy that standard. *See Hood*, 2012-Ohio-6208, at ¶ 40, 42.

**{¶36}** Snapchat provided to NCMEC most of the information in the Exhibits that was relevant at trial. But, tellingly, in the Reports themselves NCMEC states that it "does not investigate and cannot verify the accuracy of the information submitted to the CyberTipline."

Case No. 2024-T-0076

**{¶37}** We therefore conclude that, with respect to Counts 3-6, the CyberTipline Reports were inadmissible hearsay and that the trial court erred as matter of law when it overruled Appellant's objection to their use.

**Confrontation:**

**{¶38}** Turning to the Confrontation Clause, under the United States Constitution, a criminal defendant has a right to confront witnesses. The Sixth Amendment's Confrontation Clause, which is binding on the states through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Article I, Section 10 of the Ohio Constitution states that "[i]n any trial, in any court, the party accused shall be allowed . . . to meet the witnesses face to face . . . ." "'While these constitutional provisions are not identical, the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment.'" *State v. Arnold*, 2010-Ohio-2742, ¶ 12, quoting *State v. Self*, 56 Ohio St.3d 73, 79 (1990).

**{¶39}** Confrontation Clause violations are subject to harmless error analysis. *State v. Edwards*, 2013-Ohio-1290, ¶ 27 (11th Dist.). "'A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt.'" *Id.*, quoting *State v. Conway*, 2006-Ohio-791, ¶ 78, citing *Chapman v. California*, 386 U.S. 18, 24 (1967).

**{¶40}** The right to confrontation applies to all testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). "[T]he admission of a testimonial hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment unless (1) the declarant is unavailable and (2) the defendant had a prior opportunity to

cross-examine the declarant." *State v. Neyland*, 2014-Ohio-1914, ¶ 173, citing *Crawford* at 68.

**{¶41}** "The proper inquiry for determining the testimonial nature of a statement is 'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *State v. Metter*, 2013-Ohio-2039, ¶ 35 (11th Dist.), quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

**{¶42}** However, the "Confrontation Clause does not prohibit the introduction of all out-of-court testimonial statements by witnesses who are unavailable and have not been subject to confrontation." *State v. Lewis*, 2007-Ohio-1485, ¶ 41 (1st Dist.). *Crawford* held that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford* at 59, fn. 9. Where an officer's testimony about an unavailable declarant's testimonial statement is "not offered to prove the truth of the matter asserted," it does not violate the defendant's right to confront witnesses. *Ricks*, 2013-Ohio-3712, at ¶ 18. Where the testimony at issue is offered to "'explain the subsequent investigative activities of the witness'" and not offered to prove the truth of the matter asserted, it does not violate a defendant's right to confront witnesses. *Ricks* at ¶ 20, quoting *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980).

**{¶43}** *Hood*, 2012-Ohio-6208, is instructive. There, the Ohio Supreme Court determined that although cell-phone records are generally considered business records and not testimonial, their admissibility still depends on the "assurance that the records at

Case No. 2024-T-0076

issue are business records." *Id.* at ¶ 39. The Court excluded the cell-phone records because

> there was simply no foundation laid by a custodian of the record or by any other qualified witness. Detective Veverka was not a custodian of the records. He did not prepare or keep the phone records as part of a regularly conducted business activity. Nor was he an "other qualified witness" under the rule. A "qualified witness" for this purpose would be someone with "enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business." 5 McLaughlin, *Weinstein's Federal Evidence,* Section 803.08[8][a] (2d Ed.2009)[.]

*Id.* at ¶ 40.

{¶44} The Court said that "[i]f the records had been authenticated, we could be sure that they were not testimonial, that is, that they were not prepared for use at trial. Without knowing that they were prepared in the ordinary course of business, among other requirements of Evid.R. 803(6), we cannot determine that they were nontestimonial. We thus find that the admission of the records in this case was constitutional error." *Id.* at ¶ 42.

{¶45} The CyberTipline Reports indicate that some of the information they contain is submitted to NCMEC by an ESP, in this instance, Snapchat. The Reports contain a disclaimer on the bottom of the front page that states:

> The National Center for Missing & Exploited children (NCMEC) is a private, non-profit 501(c)(3) organization created in 1984 by child advocates to serve as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited child issues. To further NCMEC's mission to reduce child sexual exploitation and prevent future victimization, NCMEC operates the CyberTipline. NCMEC makes information submitted to the CyberTipline by members of the public and Electronic Service Providers available to law enforcement and uses this information to identify online trends endangering children that can be addressed in child safety and prevention messaging. NCMEC offers its programs and services pursuant to its own private mission and independent business operations. NCMEC does not act in the capacity or under the direction or control of the government or law enforcement

agencies. NCMEC does not investigate and cannot verify the accuracy of the information submitted to the CyberTipline.

**{¶46}** Although the issue of CyberTipline Reports and the Confrontation Clause appear to be novel in the State of Ohio, the Ohio Supreme Court's conclusion in *Hood*, finding that the Court could not be sure that cell phone records were not testimonial because the records were not properly admitted as business records, demands the same result in this case. Out-of-state caselaw is also sparse but suggests the same result. *See United States v. Lukassen*, 2022 WL 4762414, *2, *2 fn. 2 (D.Neb. Oct. 3, 2022) (Memorandum Order on Motion in Limine relating to CyberTipline Report noting that "[t]he Government further indicates that it may call the individual or individuals who made the 'Cybertips' in their case-in-chief." . . . "[I]f the Government intends to offer the 'Cybertips' under the business records hearsay exception . . . as business records, it must be prepared to fully explain that the business records hearsay exception applies."); *United States v. Morrissey*, 895 F.3d 541, 554 (8th Cir. 2018) ("We also assume, without deciding, that" NCMEC confirmations that images constituted CSAM were testimonial and not admissible under the business records exception.); *Bordelon v. State*, 673 S.W.3d 775, 781-783 (Tex.App. 2023) (where the court addressed hearsay and Confrontation Clause arguments and found that the limited admission of an NCMEC affidavit as a business record for the purpose of showing what notice the police department began with and what precipitated the investigation was not error).

**{¶47}** Exhibits 19 and 21, the CyberTipline Reports and the images and videos associated with those Reports (Exhibits 3 through 6), did not have any certification or affidavit from a records custodian. Although it appears a portion of the Reports were prepared using machine produced data, it appears that Snapchat's initial report to

NCMEC relied on human input and review and that NCMEC's decision to transmit the CyberTipline Reports to a particular ICAC regional office also relied on human input. We cannot say that the exhibits fall under the raw-machine produced data exception. *See Lautanen*, 2023-Ohio-1945, at ¶ 78 (11th Dist.).

{¶48} Further, none of the State's witnesses were in a position to testify as an "other qualified witness" under Evid.R. 803(6). "The phrase 'other qualified witness' is to be interpreted broadly." *State v. Cannon*, 1999 WL 476111, *5 (11th Dist. June 30, 1999). "The foundational witness must be sufficiently familiar with the business and the procedures employed in the record's preparation that he or she can testify that the record is what it purports to be and was made in the ordinary course of business and must possess a working knowledge of the specific record-keeping system that produced the document." *Id.*

{¶49} Although the State's witnesses spoke with detail about the legal framework and typical process for the creation of a CyberTipline Report, they did not testify to Snapchat's record-keeping process and did not testify as to a working knowledge of the specific record-keeping system that produced the documents. They did not prepare these documents and did not state that they were familiar with the record-keeping system at Snapchat to explain how the record came into existence in the ordinary course of Snapchat's business. Although capable to explain the detailed process of how ESPs submit CyberTips to the NCMEC and how that information is then forwarded to an ICAC field office, the State's witnesses did not testify as to Snapchat's specific record-keeping system that produced the documents, how Snapchat generated its CyberTips, and whether those records came into existence in the ordinary course of business. This

holding should be understood to be factually driven and not limiting the general case law on other qualified witnesses.

{¶50} As in *Hood*, the CyberTipline Reports were not properly admitted business records through either the testimony of a records custodian or through a certification. With respect to Counts 1 and 2 and 7 through 11, the State did not use the Reports to prove the truth of the matter asserted. The use of these documents was non-testimonial in nature. Therefore, there was no violation of Appellant's right to confront witnesses as to those Counts. *See Ricks*, 2013-Ohio-3712, at ¶ 20.

{¶51} However, because they were offered for the proof of the matter asserted as to Counts 3 through 6 without being properly admitted, we cannot determine that they were nontestimonial and their admission was constitutional error. Given this failure, the use of the Reports as to Counts 3-6 violated Appellant's right to confront witnesses against him.

{¶52} Accordingly, Appellant's sole assignment of error has some merit. Appellant's convictions as to Counts 3 through 6 were based on inadmissible hearsay evidence and must be vacated. This matter is remanded to the trial court for that purpose and for Appellant to be re-sentenced on Counts 1 and 2 and 7 through 11.

Case No. 2024-T-0076

{¶53} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed as to Counts 1-2 and 7-11, reversed as to Counts 3 through 6, and remanded for further proceedings consistent with this opinion.

MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed as to Counts 1-2 and 7-11, reversed as to Counts 3 through 6, and remanded for further proceedings consistent with this opinion.

Costs to be taxed against the parties equally.

JUDGE JOHN J. EKLUND

JUDGE MATT LYNCH,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-T-0076